**HERAEUS–AMERSIL, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 82–4–00525.

United States Court of
International Trade.

March 26, 1986.

Fitch, King and Caffentzis (Richard C. King and Peter Fitch) New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division (Barbara Epstein) Washington, D.C., for defendant.

## MEMORANDUM OPINION

CARMAN, Judge:

This case involves the proper tariff classification of "bell jars," otherwise described by plaintiff as "large, tubular articles, made of fused silica," with "[o]ne end ... closed, in approximately hemispherical shape, and the other ... open." The United States Customs Service (Customs) classified the merchandise under item 548.05, Tariff Schedules of the United States (TSUS), as articles of glass, other than tubes or tubing, not specially provided for. Plaintiff claims that the merchandise is more specifically classified under item 548.-01, TSUS, as glass tubes.

Following are the relevant tariff provisions:

Schedule 5, Part 3, Subpart D:

Articles not specially provided for, of glass:

Tubes and tubing with ends processed:

| [Claimed under:] | 548.01 | Containing over 95 percent silica by weight | 7 % ad · |
| | | | 6.7% ad val. |
| | | | 6.4% ad val. |

\* \* \*

| [Classified under:] | 548.05 | Other ................................. | 12.5% ad val. |
| | | | 11.8% ad val. |
| | | | 11.0% ad val. |

Upon a trial and submission of post-trial briefs, the Court concludes that the plaintiff has not overcome the presumption that the government's classification is correct by showing that the merchandise is more specifically described as tubes. *See* 28 U.S.C. § 2639(a)(1) (1982).

### Discussion

At trial, plaintiff offered into evidence a sample of the imported merchandise. It is cylindrical, white, and the texture of its exterior surface is sandy. The interior surface is smooth and glossy. One end is closed, in approximately hemispherical shape, and the other is open. The outside diameter of the sample is 11 inches. Its

---

1. As modified by T.D. 68–9, the rate of duty depends upon the year of entry. Plaintiff's merchandise was exported from West Germany and entered at the port of Newark from 1979 through 1981.

wall thickness is ⅜ inch and it is 20 inches high. The parties have stipulated, however, that the subject merchandise of this case ranges in sizes up to 36 inches in diameter and up to 94 inches high. Typical sizes are 18 to 36 inches in diameter, 24 to 94 inches high, and with ⅜ to ¾ inch wall thicknesses. All of the imported merchandise is similar in appearance to the exhibit, except for size.

The parties also stipulated that the merchandise is invoiced as Rotosil tubes with one end hemispherically closed, or as bell jars, and that the imported merchandise is not "tubing."

Plaintiff bases its claimed classification on the contention that the imported articles are commonly known as tubes. Plaintiff relies on various dictionary definitions of the word "tube" and concludes simply that "what is a 'tube' is not determined by size, material, or use, but by the shape of the article." Plaintiff's Brief 9. A sampling of one such dictionary definition, which is fairly representative, follows:

1. A long hollow cylindrical body, as of wood, metal, rubber, or glass, generally used for the conveyance of something through it, but often as a receptacle for holding something; a pipe.

*Funk & Wagnalls New Standard Dictionary of the English Language* (1942).

Plaintiff quotes the decision in *Terumo-America, Inc. v. United States*, 2 CIT 121, 132 (1981) (glass rods used in the manufacture of thermometers classified as tubing), which states, "The tariff schedules do not define tubes, and the *Tariff Classification Study, Explanatory and Background Materials* (1960) fails to shed light on this question." From this, plaintiff surmises that the visual appearance of the articles and the testimony of its witness are determinative of the correct classification of the merchandise. The witness, Mr. Allan C. Kreutzer, vice president of marketing and sales for the plaintiff company, testified that the imported articles are known as tubes. Plaintiff fails, however,

to cite and deal with the compelling body of relevant case law, which clearly shows not only that an article is not classifiable as a tube merely because it is called a tube, *see United States v. The A.S. Aloe Co.*, 20 CCPA 319, 322, T.D. 46111 (1932),[2] but also that the shape of the article as a tube is not controlling for customs classification purposes. *See United States v. Kelvin & Wilfrid O. White Co.*, 24 CCPA 327, 331, T.D. 48768 (1937). Where an article "has a function other than that performed by a tube, as that term is ordinarily understood," it is not properly classified as a tube. *United States v. E.H. Sargent & Co.*, 20 CCPA 172, 176, T.D. 45774 (1932). Plaintiff's statement that the use of the imported articles is "immaterial as to whether or not they are tubes," Plaintiff's Brief 6, is patently incorrect for customs classification purposes.

In the case at bar, the evidence at trial establishes that plaintiff's Rotosil articles are used for purposes not ordinarily associated with tubes. As Mr. Kreutzer testified,

[T]he first use is as bell jars ... in the semiconductor industry ... for the manufacture of polycrystalline silicon by the Siemens process. This process uses the decomposition of the gas tri-chloro-silane. In this process a long, very thin, rod in the form of a hairpin of pure silicon is attached to a reactor plate, usually made of silver, and the tube or bell jar is placed over this rod and sealed against the reactor plate. The tri-chloro-silane and hydrogen are introduced via gas ducts in the reactor plate, and an electrical current passed through the silicon hairpin. The combination of these two chemicals and the electrical current causes a decomposition reaction, into pure silicon, which deposits on the hairpin, and hydrochloric acid gas, which is exhausted from the bell jar.

After this process is complete, the pure silicon material is removed, and broken up into pieces. This material is then

---

2. In contrast, an article may warrant classification as a tube even though it is not commercially referred to as a tube. *See, e.g., Winkler-Koch*

*Engineering Co. v. United States*, 16 Cust.Ct. 42, 47, C.D. 982 (1946) (oil well casing classified as iron or steel tubes not specially provided for).

placed in other Rotosil or other brand of fused silica tubes or crucibles such as the imported articles, with the open end up. This polycrystalline silicon is then melted, and by dipping down a single pure crystal seed, a single pure crystal of silicon several inches in diameter and several feet long is pulled from the molten mass. This process is called the Czochralski process. Rotosil crucibles can also be used in other melting processes, including precious metals in the refining or casting operations, or melting any other material which is corrosive at high temperature.

After the single crystal which has been drawn from the crucible is further processed, it is sliced into wafers which, after substantial additional processing, become the micro-chips of electronics. In one of the steps of this processing, called epitaxy, the tubes are normally used closed end down, and in this orientation are called epitaxial reactors. In this process wafers sawn from the single crystal and further processed are loaded into graphite susceptors and covered with the tube. The end of the tube is sealed against a plate, and gases introduced into the tube through the plate sealing the open end. Epitaxy coats the wafers with pure silicon.

Transcript 114–16.

■ It is clear that the purposes of plaintiff's merchandise go well beyond those ordinarily associated with tubes, such as conveying gases or liquids or serving as mere receptacles.[3] In each of the following cases, the court classified, on the basis of use, tubelike articles of glass under provisions other than that for tubes.

In *E.H. Sargent & Co.*, the Court of Customs and Patent Appeals reversed the lower court and found that graduated Bunsen tubes, Roehrig tubes with projecting faucets, and absorption tubes open at both ends and having between these ends a succession of globular formations connected by small necks, were properly classifiable as scientific glass articles under paragraph 218(a), Tariff Act of 1930. The court did not elaborate on the function of each article, but indicated that their scientific purposes could not be accomplished by the use of mere tubes. 20 CCPA at 176.

The court found that a centrifuge sedimentation tube constructed for use in centrifugal machines and used to make urinary analyses is "a chemical article and more than a tube." *The A.S. Aloe Co.*, 20 CCPA at 323.

Finally, in *Kelvin & Wilfrid O. White Co.*, the court found that glass sounding tubes used to record the depths of ocean water also are more than tubes. The interior of each tube was coated with a chemical that changed color when coming in contact with salt water. The court observed:

[W]hen scientific tubes or tubing are made into different completed articles which perform particular chemical or scientific purposes, they cease to be the tubes or tubing for which Congress made provision in subdivision (b) [paragraph 218, Tariff Act of 1930]. When the new article performs a function not performed by tubes or tubing, as those terms are commonly understood, the merchandise loses its character as tubes or tubing.

24 CCPA at 331.[4]

As Mr. Kreutzer's testimony indicates, the merchandise in the case at bar is designed to perform very special industrial functions—namely, to serve as bell jars for

---

3. The uses of tubes are not necessarily limited to conveying or holding something, but must nevertheless be uses that are ordinarily associated with tubes. In *Ball v. United States*, 8 Ct. Cust.Appls. 143, 146, T.D. 37271 (1917), the court found that "[t]he uses of steel tubes as material are so common and well known that in the absence of commercial designation we can not say the articles here are not steel tubes within the common understanding of that term." *Id.*

4. The issue in *Sargent, Aloe* and *Kelvin* was whether the merchandise was classifiable as tubes or tubing under paragraph 218(b), Tariff Act of 1930. With the enactment of the TSUS, items 548.01 and 548.03 continued the existing rate treatment for tubes and tubing previously dutiable under paragraph 218(b). *See Tariff Classification Study, 5th Supplemental Report* 38, 114 (1963).

the manufacture of polycrystalline silicon by the Siemans process, as crucibles for the melting of silicon in the Czochralski process or for the melting of precious metals, and as epitaxial reactors for the coating of silicon wafers. Transcript 115–16. Further, Heraeus-Amersil manufactures articles to the particular specifications of each customer depending on the intended use. *See* Transcript 139–40. Importantly, the tubular shape of the articles is not nearly so important as the material from which the articles are made. *See id.* at 113. As Defendant's Exhibit A, a brochure of Heraeus Quarzschmelze, describes plaintiff's Rotosil bell jars:

> The inner surfaces of these bell jars are always fire-glazed and very densely fused to an almost glassy finish, thus providing the best conditions for a clean and trouble-free operation. The walls are otherwise opaque and therefore act as thermal insulators—a very desirable effect which contributes toward lower running costs. After a lining of the bell jars with an additional layer of pure transparent quartz glass was found to improve the purity of the deposited silicon significantly, the demand has increasingly shifted to bell jars fitted with the additional inner layer. The best in this respect are bell jars with an inner layer of synthetic quartz glass....

It is clear that the articles are designed as "more than" conveyers of liquids or gases, or as mere receptacles. *See E. Green & Son v. United States*, 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971) (application of "more than" doctrine must be determined in each case on it own facts).

In discussing plaintiff's imported merchandise, plaintiff's witness Kreutzer discussed generally all of the similar merchandise manufactured by plaintiff, referring to the merchandise as tubes or tubing, sometimes qualified by the phrase "with one end closed," and otherwise called "bell jars, crucibles, furnace or diffusion tubes, fur-

nace muffles, or reactors." Transcript 113, 137. Mr. Kreutzer also discussed similar merchandise manufactured by plaintiff in 1962 to 1963 referred to as cylindrical pipes with closed ends, cylindrical shape opaque muffles, or cylindrical pots. *Id.* at 117. But as plaintiff has developed the capability of manufacturing larger "tubes," *id.* at 116, and "their use in the semiconductor industry has grown, they have also acquired other names, depending upon the particular use to which the customer will apply them." *Id.* at 117. Mr. Kreutzer concluded, "The one term which properly describes them, no matter in what orientation, or for what purpose used, is tubes with one end closed." *Id.*[5]

The shape of the articles or that they are called tubes, however, is not controlling. The major functions of the articles are not those of tubes. Their primary functions are as bell jars, epitaxial reactors and crucibles for the manufacture of silicon chips in the semiconductor industry. *Cf. E. Green & Son v. United States*, 59 CCPA at 35, 450 F.2d at 1399 (primary function of finned tubes to heat or cool water flowing through them warranted classification as manufactures of iron rather than as iron pipe or tubes). Although the tariff provision for tubes is *eo nomine*, use in this case, as in the other cited cases dealing with the classification of tubelike articles, is of paramount importance and cannot be ignored in determining the identity of the imported articles for customs classifications purposes. *See United States v. Quon Quon Co.*, 46 CCPA 70, 73, C.A.D. 699 (1959) (woven rattancore classified according to its use as parts of furniture notwithstanding the *eo nomine* tariff provision for "baskets").

### Conclusion

■ Because plaintiff's imported merchandise is specifically designed and manufactured to perform functions not common-

---

**5.** It is noteworthy, nevertheless, that plaintiff in its catalogues and purchase orders distinguishes the subject imported merchandise from its tubing and refers to the imported articles by the names denoting the intended functions, i.e., Ro-

tosil bell jars or crucibles. *See* Plaintiff's Exhibit 3, at 16, Plaintiff's Exhibit 4 at 26, and Defendant's Exhibit C, at 26 (price lists); Defendant's Collective Exhibit D *passim* (purchase orders).

ly understood to be those performed by tubes, plaintiff has not met its burden of proving that Customs' classification is incorrect by showing that the merchandise is more specifically provided for under item 548.01, TSUS, as glass tubes with ends processed. The Court accordingly sustains Customs' classification of the imported merchandise under item 548.05, TSUS, as other glass articles not specially provided for.

