NESTLE REFRIGERATED FOOD CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 92–07–00445

(Dated July 20, 1994)

*Katten Muchin & Zavis (Lynn S. Baker, Kathleen M. Murphy, Mark S. Zolno),* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Nancy M. Frieden, Edith S. Shea)* for defendant.

*Grunfeld, Desiderio, Lebowitz & Silverman* (Steven P. Florsheim), for Amicus Curiae, Amko International Trading, Inc.

### OPINION

GOLDBERG, *Judge:* This matter is before the court following trial *de novo.* The question presented is the proper tariff classification of a canned tomato product imported from Spain, and entered into the United States on February 24, 1992. The United States Customs Service

("Customs") classified the product at issue as "tomatoes, whole or in pieces" under heading 2002.10.00 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1992), and assessed a duty of 100 percent *ad valorem* in conjunction with subheading 9903.23.17, HTSUS. Plaintiff, Nestle Refrigerated Food Co. ("Nestle"), claims the product is properly classified as either: "tomato sauce, other" under subheading 2103.20.40, HTSUS, dutiable at the rate of 13.6 percent *ad valorem;* a "preparation for sauce, other" under subheading 2103.90.60, HTSUS, dutiable at the rate of 7.5 percent *ad valorem;* "other tomatoes prepared or preserved" under subheading 2002.90.00, HTSUS, dutiable at the rate of 13.6 percent *ad valorem;* or, a "food preparation not specifically provided for elsewhere, other" under subheading 2106.90.60, HTSUS, dutiable at the rate of 10.0 percent *ad valorem.* The court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988). Upon review, the court finds that the subject import is properly classified under subheading 2103.90.60, HTSUS, as a preparation for sauce. Judgment will therefore be entered for plaintiff.

BACKGROUND

The imported merchandise ("Malpica product") is produced in Spain and consists of tomato pieces, tomato puree, basil, citric acid and salt. Nestle purchases the Malpica product for use in its Contadina-brand refrigerated Marinara and Plum Tomato sauces. Contadina Marinara and Plum Tomato sauces are marketed and sold as accompaniments to Contadina pasta products. The Malpica product is not advertised, merchandised, marketed, or sold, in its condition as imported.

The subject merchandise is produced in the following manner. On one production line, whole tomatoes are washed, sorted, scalded to loosen the skin, rinsed, peeled mechanically, and sliced into irregularly sized pieces. Certain blades are removed from the dicer specifically to produce irregular chunks rather than uniform cubes. On a second production line, puree is made by washing and sorting tomatoes and then subjecting them to a hot-break process.[1] Next, the puree is cooked and concentrated to a very viscous consistency. The puree passes through a series of screens, and is then evaporated until the required brix[2] is obtained. The tomato pieces and the puree are combined and packed in industry standard Number 10 cans. Salt, one basil leaf, and citric acid are added to each open can. The cans are then sealed and heat processed to ensure shelf life stability.

Entry of the Malpica product was made on February 24, 1992. Customs imposed a 100% *ad valorem* duty rate under HTSUS subheading

---

[1] In the hot-break procedure, the tomatoes are given a preliminary heating that "completely destroys the enzymes and protects the constituents of the tomato (especially pectin) from enzymatic change." Wilbur A. Gould, *Tomato Production, Processing & Technology* 221 (3d ed. 1992) *(Plaintiff's Exhibit 21–C).*

[2] The term "brix" refers to an equivalent sugar scale of refractive indices for measuring soluble solids. *See* 7 C.F.R. § 52.1553 (1992). At trial, Nestle's expert witness, Dr. Philip Nelson, testified that the brix level is important because a higher soluble-solids content indicates that the product possesses more value and thus can be marketed at a higher retail price.

9903.23.17.[3] The entry was liquidated on June 19, 1992. Nestle filed a protest on June 22, 1992, which Customs denied on July 6, 1992. shortly thereafter, Nestle filed its summons and complaint in the present action.

DISCUSSION

Customs' tariff classification decision is presumed to be correct, and the importer has the burden of proving otherwise. 28 U.S.C. § 2639(a)(1) (1988); *see, e.g., Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). To determine whether the importer has overcome this statutory presumption, the court must consider whether the government's classification is correct, both independently and in comparison with the importer's proposed alternative. *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

The court will address each of the competing proposed tariff provisions. First, the court will establish that the Malpica product is more than tomatoes in pieces. The court will then examine whether the Malpica product is more accurately classified as either a tomato sauce, a preparation for sauce, or other prepared or preserved tomatoes. For the following reasons, the court finds that the Malpica product is best described under subheading 2103.90.60, HTSUS, as a "preparation for sauce, other." Consequently, the court need not consider subheading 2106.90.60, HTSUS, a basket provision covering other food preparations.

A. *Subheading 2002.10.00, HTSUS: Tomatoes in Pieces:*

The threshold question in this case is whether the imported tomato product was properly classified by Customs under subheading 2002.10.00, HTSUS, as "tomatoes prepared or preserved otherwise than by vinegar or acetic acid: tomatoes, whole or in pieces," i.e. "tomatoes in pieces." The meaning of a tariff term is a question of law. *Brookside Veneers, Ltd. v. United States,* 6 Fed. Cir. (T) 121, 124, 847 F.2d. 786, 788 (1988). Whether a particular product fits within a properly defined tariff term is a question of fact. *Hasbro Indus. Inc. v. United States,* 7 Fed. Cir. (T) 110, 112, 879 F.2d 838, 840 (1989). When a tariff term is not clearly defined in either the HTSUS or its legislative history, the correct meaning of a tariff term is generally resolved by ascertaining its common and commercial meaning. *See, e.g., W.Y. Moberly, Inc. v. United States,* 9 Fed. Cir. (T) 50, 52, 924 F.2d. 232, 235 (1991).

Customs argues that the common meaning of "tomatoes in pieces" is canned tomatoes. Customs asserts that the Malpica product fits that meaning because it conforms to both the standards of identity for canned tomatoes of the Food and Drug Administration ("FDA") as set forth at 21 C.F.R. § 155.190 (1991) ("FDA standards"), and to the trade

---

[3] Subheading 2002.10.00, HTSUS (1992) references subheading 9903.23.17, HTSUS, which provides for the imposition of a 100 percent *ad valorem* retaliatory duty on certain products from the European Community ("E.C.") in response to the U.S.-E.C. beef hormone dispute. Presidential Proclamation 5759, 52 Fed. Reg. 49,131, 49,133 (Dec. 30, 1987).

understanding and consumer expectations of what is meant by the term "canned tomatoes." Nestle does not dispute that the Malpica product contains tomatoes in pieces.[4] Rather, Nestle asserts that Customs' classification is incorrect because the Malpica product is *more than* tomatoes in pieces. When an article is in character or function something other than as described by a specific provision in the tariff schedule, either more limited or more diversified, and the difference is significant, it cannot be classified within that provision. *Robert Bosch Corp. v. United States,* 63 Cust. Ct. 96, 103–04, C.D. 3881 (1969) (citations omitted). If the difference is merely an improvement or amplification, and the essential character of the merchandise is preserved or only incidentally altered, the rule is that an *eo nomine* designation will include all forms of the article, absent contrary legislative intent or commercial designation. *Id.* at 104 (citing *Nootka Packing Co. v. United States,* 22 CCPA 464, T.D. 47,464 (1935)). To determine whether a product is more than that provided for in a particular tariff provision, the court must first ascertain the common meaning of that provision and compare it with the merchandise in question. *E. Green & Son (New York), Inc. v. United States,* 59 CCPA 31, 34, 450 F.2d 1396, 1398 (1971).

Therefore, the court will first determine the common meaning of "tomatoes, whole or in pieces," taking guidance from the FDA standards of identity for canned tomatoes. The court is careful to note, however, that compliance with the FDA standards for canned tomatoes is not dispositive in this classification issue. The court will then examine the Malpica product in light of this common meaning.

The court first notes that not every product composed of tomatoes was intended to be classified as "tomatoes, whole or in pieces." The *Explanatory Notes* specifically state that HTSUS Heading 2002 **"excludes** tomato ketchup and other tomato sauces."[5] Furthermore, even within this heading for prepared or preserved tomatoes, tomato paste and tomato puree are distinguished from tomatoes, whole or in pieces.[6] Courts have often noted that "a seemingly broad descriptive tariff term is not to be taken as encompassing every article which may literally come within that term * * *" *United States v. General Elec. Co.,*

---

[4] The Malpica product is a tomato product; it is preserved not by vinegar or acetic acid, but because it is canned. Examination of the Malpica product clearly indicates that the tomatoes are in "pieces." Thus, the Malpica product undeniably contains "tomatoes in pieces, preserved otherwise than by vinegar or acetic acid."

[5] Customs Co-Operation Council, *Harmonized Commodity Description and Coding System: Explanatory Notes ("Explanatory Notes")* Section IV, Chapter 20 at 148 (1986). *Explanatory Note 20.02* states in full:

**20.02—Tomatoes Prepared or preserved Otherwise Than By Vinegar Or Acetic Acid.**
　　2002.10—**Tomatoes, whole or in pieces**
　　2002.90—**Other**

　　This heading covers tomatoes, whether whole or in pieces, **other than** tomatoes prepared or preserved by vinegar or acetic acid **(heading 20.01)** and tomatoes presented in the states specified in **chapter 7.** Tomatoes are classified in this heading irrespective of the type of container in which they are put up.
　　The heading also includes homogenised prepared or preserved tomatoes (e.g., tomato purée, paste or concentrate) and tomato juice of which the dry weight content is 7% or more. However, the heading **excludes** tomato ketchup and other tomato sauces **(heading 21.03)** and tomato soup and preparations therefor **(heading 21.04).**

[6] The parties have stipulated that tomato paste (subheadings 2002.90.0010 and 2002.90.0020, HTSUS) and tomato puree (subheadings 2002.90.0030 and 2002.90.0040, HTSUS) are not within the trade understanding of a tomato sauce. *Pretrial Order,* Statement of Uncontested Facts ¶ 25. The parties have further stipulated that the subject merchandise is not tomato ketchup (subheading 2103.20.20, HTSUS). *Id.* ¶ 18.

58 CCPA 152, 156, 441 F.2d 1186, 1189 (1971); *see, e.g., Mitsubishi Int'l Corp. v. United States,* 17 CIT 871, 884, 829 F. Supp. 1387, 1397 (1993). Given the absence of evidence to the contrary, the court finds that the provision for "tomatoes, whole or in pieces" is intended to embrace only those products that fall squarely within the common meaning of that tariff term.

The FDA standards of identity for canned tomatoes provide guidance as to the common meaning of "tomatoes, whole or in pieces." 21 C.F.R. § 155.190(a)(1)(i) (1991) provides a description of canned tomatoes. Specifically, canned tomatoes are described as the food product prepared from peeled or unpeeled mature tomatoes of red or reddish varieties. The tomato stems and calicies must be removed, and the tomatoes must be cored, except where the internal core is insignificant to texture and appearance. *Id.* The tomatoes may be in a variety of styles, such as whole, diced, sliced, wedges, or in pieces.[7] Optional ingredients may be added to the tomatoes, including salt, spices, flavoring or seasoning, as well as vegetable ingredients such as onion, peppers, and celery, not to exceed ten percent by weight of the finished food. *Id.* § 155.190(a)(2). Finally, the tomatoes may be packed in an optional packing medium such as tomato paste or puree. *Id.* § 155.190(a)(3).

Based on the evidence and testimony presented at trial, the court finds that the essential character of a product classifiable under the provision "tomatoes, whole or in pieces" is defined by the tomatoes contained in the product. As defendant's witness, Ms. Nannie Rainey, Chief of the Food Standards Branch of the FDA, testified, "[t]he only thing that must be in canned tomatoes is tomatoes. All the other ingredients are optional." In the court's view, any optional ingredients added must serve to complement, highlight, and not overwhelm, the essential character of the tomatoes. When too much of an optional ingredient or a combination of optional ingredients are added to tomatoes, whole or in pieces, such that the flavor, aroma, texture and consistency of the tomato component are materially altered, that product can no longer be deemed to be just tomatoes, whole or in pieces. Instead, such a product becomes something more than tomatoes, whole or in pieces; indeed, that product is more accurately described as either a sauce, a preparation for sauce, or some other prepared or preserved tomato product.

The government errs in arguing that if the Malpica product satisfies the FDA standards for canned tomatoes it therefore must be classified as tomatoes in pieces, and cannot be classified under any of Nestle's alternative subheadings. This position is wrong for several reasons. First, it is well established that statutes, regulations, and administra-

---

[7] 21 C.F.R. § 155.190(a)(4) specifies four styles in which the tomatoes may be prepared. Defendant's witness, Ms. Nannie Rainey, testified that this list is not exclusive. *See, e.g.,* Joint FAO/WHO Food Standards Programme, Codex Alimentarius Commission, 2 *Codex Alimentarius: Codex Standards For processed Fruits And Vegetables And Edible Fungi* 3 (Codex Standard for Canned Tomatoes) (1981) *("Codex Alimentarius").* A tomato product is not required to be prepared as whole, diced, sliced, or in wedges, in order to comply with the FDA standards. Labeling a tomato product prepared in an unlisted style, such as "chunks" or "pieces," would not preclude that tomato product from satisfying the FDA standards for canned tomatoes.

tive interpretations not related to tariff purposes are not determinative of customs classification disputes. *United States v. Mercantil Distribuidora, S.A.,* 43 CCPA 111, 116–17, C.A.D. 617 (1956) (USDA regulation interpreting meaning of "cured beef" is not binding for tariff purposes); *see also Amersham Corp. v. United States,* 5 CIT 49, 56, 564 F. Supp. 813, 817 (1983), *aff'd,* 2 Fed. Cir. (T) 33, 728 F.2d 1453 (1984) (rules and regulations developed to protect public safety are not determinative of customs classification disputes). Furthermore, this court has specifically noted that FDA standards of identity are not controlling for tariff classification purposes. *Charles Jacquin et Cie, Inc. v. United States,* 14 CIT 803, 805 (1990) ("'An imported product, properly labeled a jam according to FDA standards, might be dutiable as preserved fruit; similarly, some imported products labeled as a "preserve" (e.g., strawberry preserves) may be dutiable as jam.'" (quoting 8 *Summaries of Trade and Tariff Information,* Schedule 1 at 267 (1969))); *see also Joseph F. Hendrix v. United States,* 82 Cust. Ct. 264, 271, C.D. 4809 (1979) (although enlightening, FDA regulation is "not determinative"); *Alexandria Int'l, Inc. v. United States,* 13 CIT 689, 696–97 (1989) (the use of FDA "requirements" intended to aid interpretation of FDA statutes is of questionable value for determining the tariff meaning of "sardine").

Unlike canned tomatoes, no FDA standards exist for non-standardized tomato-based products such as spaghetti sauce, chili sauce, or pizza sauce. No definitions of these products have been officially recognized. instead, manufacturers are free to formulate such products in accordance with evolving consumer preferences.[8] Therefore, in this case, the FDA standards of identity for canned tomatoes are not very helpful in distinguishing canned tomatoes from any other non-standardized tomato-based product.

Furthermore, the FDA canned tomato standards are so broadly defined that a product may properly be labeled as canned tomatoes according to the FDA standards, and yet the contents of that product may be more accurately described as either a sauce or a preparation for sauce, as those terms are commonly understood. As noted earlier, the FDA standards permit optional ingredients to be added to the tomatoes. The FDA standards, however, clearly do not specify a minimum or maximum amount of spices or puree that may be added. At some point, the addition of spices, puree, or other optional ingredients will materially alter the flavor, aroma, texture, and consistency of the tomato component such that an examination of the resulting tomato product will lead to the inevitable conclusion that that product is more than just tomatoes, whole or in pieces. Although the FDA standards state that optional ingredients may be added to canned tomatoes, their failure to acknowledge and delineate a threshold as to when a product becomes more than

---

[8] *See, e.g.,* National Food Processors Association, *Tomato Products: Bulletin 27–L* at 15, 30 (6th ed. 1992). This bulletin was referred to at trial as the canning industry's "canning bible."

tomatoes in pieces limits the value of the FDA standards in resolving the classification dispute that is presently before this court.

Upon examination of the Malpica product, the court finds that the Malpica product does not fit within the common meaning of "tomatoes in pieces." The court acknowledges that the Malpica product could be labeled "chunky tomatoes in puree with basil" according to the FDA standards. However, the essential character of the Malpica product is not found exclusively within the tomato pieces. After pouring out the Malpica product, a visual inspection indicates that the Malpica product consists of approximately equal parts of tomato puree and tomato pieces. The court finds that the puree contained in the Malpica product is clearly more than a packing medium for the tomato pieces; rather it is an integral component that contributes to the essence of the Malpica product. Neither is the puree an incidental supporting ingredient for the tomato pieces; the thickness and robust flavor of the puree plays a primary role in the composition of the Malpica product. Furthermore, the court also detects a trace amount of basil aroma and flavor within the Malpica product. After examining the subject merchandise, the court agrees with Nestle's claim that the puree is equally as important as the tomato pieces in the composition of the Malpica product, and thereby brings the Malpica product beyond the scope of the tariff provision for preserved tomatoes. The Malpica product is, in fact, more than tomatoes in pieces. The court, therefore, finds that Nestle has rebutted the presumption of correctness that attaches to Customs' classification decisions. *See* 28 U.S.C. § 2639(a)(1) (1988). Next, the court will examine Nestle's proposed alternative tariff provisions to determine whether the Malpica product is a tomato sauce, a preparation for sauce, or other prepared tomatoes.

B. *Nestle's Alternatives: Tomato Sauce, Preparation for Sauce, or Other Prepared or Preserved Tomatoes:*

Nestle argues that the Malpica product should be classified under one of the following four alternative tariff provisions: (1) "sauces and preparations therefor; mixed condiments and mixed seasonings; mustard flour and meal and prepared mustard: tomato ketchup and other tomato sauces: other" under subheading 2103.20.40, HTSUS ("other tomato sauces"); (2) "sauces and preparations therefor; mixed condiments and mixed seasonings; mustard flour and meal and prepared mustard: other: other" under subheading 2103.90.60, HTSUS ("preparation for sauce"); (3) "tomatoes prepared or preserved otherwise than by vinegar or acetic acid: other: other" under subheading 2002.90.00, HTSUS ("other prepared or preserved tomatoes"); or (4) "food preparations not elsewhere specified or included: other: other" under subheading 2106.90.60, HTSUS ("food preparations, other").[9]

---

[9] The court limits its discussion to the first three alternatives. The remaining heading, "food preparations, other, need not be addressed because the court finds that the Malpica product is in fact specified elsewhere in the tariff schedule.

1. *Subheading 2103.20.40, HTSUS: Other Tomato Sauces:*

The next question to be addressed is whether the Malpica product is properly deemed a tomato sauce. First, the court will discuss the relationship between the common meaning of "tomato sauce" and the common meaning of "sauce." Second, the court will address the issue of whether the common meaning of "other tomato sauces" includes "chunky" tomato sauces, or is limited only to smooth tomato sauces. Third, the court will establish criteria by which a product can be identified as a sauce. Finally, the court will examine whether the Malpica product falls within the common meaning of "other tomato sauces."

(a) *Common Meaning of "Other Tomato Sauces":*

The common meaning of "other tomato sauces" is based on the common meaning of the term "sauce." In 1894, the U.S. Supreme Court reviewed the common meaning of the term "sauce" and determined that:

> The word "sauce," as commonly used, designates a condiment, generally but not always of liquid form, eaten as an flavor and make it more palatable; and is not applied to anything which is eaten, alone or with a bit of bread, either for its own sake only, or to stimulate the appetite for other food to be eaten afterwards.

*Bogle v. Magone,* 152 U.S. 623, 625–26 (1894) (subsequently followed by *Del Gaizo Distrib. Corp. v. United States,* 24 CCPA 64, T.D. 48,376 (1936); *United States v. Neuman & Schwiers Co.,* 18 CCPA 1, T.D. 43,971 (1930)). This is consistent with the Oxford English Dictionary, which defines "sauce" as "[a]ny preparation, usually liquid or soft, and often consisting of several ingredients, intended to be eaten as an appetizing accompaniment to some article of food." 14 *Oxford English Dictionary* 512 (2d ed. 1989).

Historically, the tariff provisions for "sauces and preparations thereof" have consistently covered a broad range of sauces, including thin soy sauce, gravy mixes, tartar sauce, Worcestershire sauce, chutney, sweet and sour sauces, ketchup, chili sauce, barbecue sauce, spaghetti sauce, mayonnaise, and any salad dressings. *Summary of Trade and Tariff Information: Edible Preparations: TSUS Items 182.05–.46. 182.49–183.05* at 50, USITC Pub. No. 841 (March 1982). Under the current HTSUS provision for "sauces and preparations therefor," subheading 2103.20 provides for "tomato ketchup and other tomato sauces." Also, it appears that subheading 2103.20.40, HTSUS, which covers "other tomato sauces," was intended to correspond to tomato sauces formerly covered by item 141.65, TSUS, and other sauces covered by Item 182.46, TSUS. *See Continuity of import and Export Trade Statistics After implementation of the Harmonized Commodity Description and Coding System,* Annex I at 15, 26; Annex II at 27, USITC Pub. No. 2051 (Jan. 1988).

Given the historically broad coverage intended for the tariff provision for other sauces, the court finds that there are only two prerequisites to

classification under the HTSUS provision for other tomato sauces; specifically, they are: (1) the product must be a sauce; and (2) tomatoes must be the primary ingredient of that sauce. The court therefore adopts the previously cited definitions of sauce, and finds that the common meaning of "tomato sauce" is defined as those tomato-based food products that are generally but not necessarily in liquid form, eaten as an appetizing accompaniment to some other food in order to make that other food more flavorful and more palatable. This provision covers not only traditional smooth tomato sauces,[10] but also other non-standardized tomato-based sauces, such as pasta sauces, chili sauces, barbecue sauces, and pizza sauces.

Customs argues that the common meaning of other tomato sauces is limited only to smooth tomato sauces. Customs relies on the *Explanatory Notes'* discussion of the provision for sauces and preparations therefor[11] to argue that the common and commercial meaning of tomato sauce does not encompass chunky tomato sauces. For several reasons, the court finds that Customs' interpretation of the common meaning of sauce is too narrow.

First, the court deems the *Explanatory Notes* for tomato sauce unpersuasive. Courts have noted that the *Explanatory Notes* are not controlling in the interpretation of the Harmonized Tariff System. *See, e.g., Pfaff Am. Sales Corp. v. United States,* 16 CIT 1073, 1076 (1992) (citing H.R. Conf. Rep. No. 576, 100th Cong., 2d. Sess. 549 (1988)). Moreover, the express terms of the *Explanatory Notes* do not preclude chunky tomato sauces. The use of "generally" and "mainly" indicate that the drafters of the Harmonized System recognized that the common meaning of tomato sauces was not limited exclusively to smooth tomato sauces.

Second, although not controlling, several of Customs' classification ruling letters also support the conclusion that the common meaning of other tomato sauces includes chunky tomato sauces. In determining that a certain "Il Sugo" tomato product would be classified under subheading 2103.20.4020, HTSUS as a sauce, Customs stated: "'Il Sugo' is a food product made from semi-concentrated tomatoes, tomato pulp, salt, fresh basil, sugar, and fresh onions. Examination of the sample finds a product with a pulpy, homogenous consistency, with scattered pieces of basil leaf, and *occasional soft, irregularly-shaped tomato and onion*

---

[10] Smooth tomato sauces are defined by the United States Department of Agriculture ("USDA") Standards for Grades of Tomato Sauce which are located at 7 C.F.R. § 52.2371 (1992). Unlike the mandatory FDA Standards of identity for canned tomatoes, the USDA standards for tomato sauce are merely quality standards that are made available for voluntary compliance by tomato processors. National Food Processors Association, *Tomato Products: Bulletin 27–L* at 15 (6th ed. 1992).

[11] *Explanatory Note 21.03* states, in relevant part:

This heading covers preparations, generally of a highly spiced character, used to flavour certain dishes (meat, fish, salads, etc.), and made from various ingredients (eggs, vegetables, meat, fruit, flours, starches, oil, vinegar, sugar, spices, mustard, flavourings, etc.). *Sauces are generally in liquid form* * * *.

The heading includes certain products based on vegetables or fruit, but these differ from the preserved products in Chapter 20 (and more especially those under heading 20.01) in that they are mainly liquids, emulsions or suspensions *containing very little solid matter* * * *.

*Explanatory Notes,* Section IV, Chapter 21 at 158.

*pieces." Plaintiff's Exhibit 37–B* (New York Ruling Letter 886114 dated June 4, 1993) (emphasis added).[12]

Third, the court notes that sauces have continuously evolved throughout history.[13] Testimony at trial revealed that, subsequent to the publication of the *Explanatory Notes* in 1986, consumer preferences for tomato-based pasta sauces have evolved from traditional smooth tomato sauces such that consumers now accept, and even demand, chunky sauces. Since the first "chunky" spaghetti sauce, Ragu Chunky Garden Style, was introduced in 1983, chunky pasta sauces have steadily acquired a significant market share of the pasta sauce market.[14] Ms. Dawn Caldwell, Contadina's category director responsible for the marketing and product development of Contadina refrigerated pasta sauces, attributed the growth in the popularity of "chunky" sauces to consumers positively identifying the term "chunky" with a sauce that looks and tastes fresh and home-made. In support of the trend toward chunkier tomato sauces, Dr. Philip Nelson, from the Purdue university Department of Food Science, testified that larger tomato pieces in a sauce are desirable because the larger pieces of tomato retain a truer tomato flavor. Therefore, marketing research on consumer preferences supports the conclusion that the common meaning is no longer confined to traditional smooth tomato-based sauces, but also includes chunky-style tomato sauces.

This court has previously noted that "[i]t is conducive to the steady and predictable development of the tariff law that inventive improvements which continue to be known by a traditional name not be excluded from a class simply because of their new physical characteristics." *Atlas Copco North Am., Inc. v. United States,* 17 CIT 1163, 837 F. Supp. 423, 426–27 (1993); *see also Joseph F. Hendrix,* 82 Cust. Ct. at 271; *Klipstein & Co. v. United States,* 4 Ct. Cust. 510, 514, T.D. 33,936 (1913). To declare that the common meaning of tomato sauce is limited only to traditional smooth tomato sauces would ignore the reality of the numerous chunky pasta sauces, barbecue sauces, and pizza sauces lining supermarket shelves today that are clearly and commonly understood by consumers to be other tomato sauces. Consequently, the court

---

[12] Similarly, Customs determined that "Pomi Pasta Sauce with Basil" would be classified as other tomato sauce under subheading 2103.20.40, HTSUS. That product consisted of chopped tomatoes, tomato paste, basil, salt and sugar. "Examination of a sample disclosed a product which was of relatively loose consistency, flowed freely, and had a pulpy, homogenous appearance. It had very small pieces of tomatoes, smaller, in fact than the scattered particles of basil leaf present, with no skin, seeds or large pieces of tomato apparent." *Plaintiff's Exhibit 37–I* (Headquarters Ruling Letter 952976 dated Feb. 11, 1993).

[13] For a thorough overview of the history of sauce making from ancient Greek and Roman times to current sauce trends, see James Peterson, *Sauces: Classical and Contemporary Sauce Making* 1–19 (1991); *see also* Jerald W. Chesser, *The Art and Science of Culinary Preparation* 202 (1992).

[14] Chunky sauce sales accounted for 17.5 percent of all spaghetti/marinara sauce sales in 1989, and 21.0 percent in 1993. *See Plaintiff's Exhibits 31 and 32* (Nielsen Marketing Research, Nielsen SCANTRACK Market Planner: Characteristic Group Volume Trend Report (6/17/89 to 6/12/93)). Ragu's Chunky Garden Style alone had an 8.9 percent market share of supermarket sales of spaghetti/marinara sauces in 1992. *Sauces Gain on Pasta's Popularity,* Food Business, June 28, 1993, at 20–22. *(Plaintiff's Exhibit 10).* Ragu's Chunky Garden Style is among the company's most popular sauces "because it comes closest to what consumers are looking for today." *Id.* at 22.

finds that the tariff provision for "other tomato sauces" is not limited to tomato sauces that are smooth in texture.[15]

To determine whether a product fits within the common meaning of tomato sauce, the court will examine a variety of key features, including its ingredients, flavor, aroma, texture, consistency, actual and intended use, and marketing. *See, e.g. , Neuman & Schwiers Co.,* 18 CCPA at 3. The court finds that of these key features, actual and intended use are of paramount importance in determining whether a product is classifiable as a tomato sauce. *See Heraeus-Amersil, Inc. v. United States,* 10 CIT 197, 202, 658 F. Supp. 290, 294 (1986). A product is a tomato sauce if it can be used "as is," i.e. the product can be eaten as an accompaniment to other foods to make such foods more flavorful and palatable. Whether a product is fit for use as a sauce depends upon more than the mere possibility of use; rather, substantial actual use as a sauce must be demonstrated. *See Wah Shang Co. v. United States,* 44 CCPA 155, 159, C.A.D. 654 (1957). Substantial actual use means more than incidental use but not chief use. *W.R. Filbin & Co. v. United States,* 9 Fed. Cir. (T) 155, 156, 945 F.2d 390, 392 (1991).

A product's physical features are to be considered in light of their effect on the product's ability to be used as a sauce. The court must determine whether the subject merchandise is a substantially finished food preparation that can be used as a sauce and not a mere input material to be used as an ingredient in other food preparations. *See Del Gaizo Distrib. Corp.,* 24 CCPA at 67. Among the physical characteristics (i.e. ingredients, flavor, aroma, texture and consistency) to be considered in determining whether a product can be used as a sauce, flavor and the amount of seasoning are most significant. Indeed "[a]n essential point in the making of a sauce is the seasoning." Jerald W. Chesser, *The Art and Science of Culinary Preparation* 202 (1992) *(Defendant's Exhibit L–9).* A tomato sauce contains characterizing ingredients such as pepper, onions, vinegar, sugar, basil, oregano, etc., in quantities that materially alter the flavor, aroma, texture and consistency of the tomato component. *See* 2 *Codex Alimentarius* 105 (Codex Standard for Processed Tomato Concentrates) (1981). This is highlighted in the testimony of Customs' expert witness, Mr. Richard Hyams, who noted that although puree is often used as an ingredient for sauce, puree by itself would not be considered a sauce primarily because it lacks the requisite amount of spicing.

The *Explanatory Notes* state that sauces are "generally of a highly spiced character." *Explanatory Notes,* Section IV, Chapter 21 at 158. Despite the importance of flavor in determining whether a product is a

---

[15] The court recognizes the possibility that a product may be considered too chunky to be deemed a tomato sauce. However, Customs' expert witness, Mr. Richard Hyams, testified that there is no standardized amount or size of tomato chunks that a chunky tomato sauce must have. Suffice to say that a chunky tomato sauce need not be limited to only small particles of tomatoes. On the other hand, as the pieces of tomato in a product become larger and more numerous, the harder it becomes to integrate those pieces with puree, paste, or pulp, to form a uniform food product physically recognizable and usable as a tomato sauce. Indeed, if the tomato pieces are too large so that they cannot fit into one's mouth, such a product obviously would not be very useful or appetizing as a sauce.

tomato sauce, there are no objective methods of flavor evaluation available. The court recognizes that any determination as to whether a product is sufficiently spiced will be subjective and will vary according to each individual's tastes. Nevertheless, any finding as to whether a product possesses characterizing ingredients that materially alter the flavor, aroma, texture, and consistency of the tomato component must relate to the ultimate consideration of whether that product would be eaten together with and in addition to other foods in order to make the other foods flavorful and more palatable. Having established this criteria, the court now turns to the question of whether the subject merchandise, i.e. the Malpica product, satisfies the common meaning of tomato sauce.

(b) *The Malpica Product Does Not Fit Within The Common Meaning of Tomato Sauce:*

The court notes the maxim that the product itself is a very potent witness. *Marubeni Am. Corp. v. United States,* 17 CIT 360, 821 F. Supp. 1521, 1523 n.3 (1993) (citation omitted). Upon analyzing the physical characteristics of the Malpica product and considering the intended and actual uses of the Malpica product, the court concludes that the Malpica product is not a sauce. First, the physical characteristics. The ingredient list indicates that the Malpica product contains tomato pieces, tomato puree, citric acid, salt, and basil. *Pretrial Order,* Statement of Uncontested Facts ¶ 13. A strong tomato odor is quite evident upon opening the can. Upon emptying the contents of the Malpica product, the court finds skinless tomato pieces that are irregularly shaped, ranging in size from approximately 0.25 to 1.25 inches long. The pieces have a soft texture and yield to pressure. Tomato seeds are visible. The Malpica product is composed of about half puree, and about half tomato pieces. One whole basil leaf is visible. Spooning through the Malpica product, the court notes that the puree is thick and clings to the spoon.

The court finds that the size of the chunks of tomatoes in the Malpica product are not too big so as to place the product outside of the common meaning of a chunky style tomato sauce. All pieces can easily be deemed bite size. Furthermore, the court does not find the tomato pieces to be too numerous. About half of the Malpica product is composed of tomato pieces; clearly, however, the Malpica product is more than tomatoes in pieces soaking in an incidental amount of puree. Indeed, the thickness of the puree stands out in the court's examination of the Malpica product. Upon emptying the contents of the Malpica product into a bowl, the tomato pieces and puree combine to form a visually appealing product resembling a sauce.

Nevertheless, although the visual appearance of the Malpica product resembles a sauce, its flavor is not one of a true tomato sauce. The court finds that the tomato flavor is so dominant that the effect of one basil leaf is clearly insufficient to materially alter the aroma or taste of the tomato component. Any basil flavor that the Malpica product possesses is only incidental to the tomato component. In this case, one basil leaf is

not enough to elevate the constituent tomato pieces and puree to the level of a cognizable sauce.

The use of the Malpica product also supports the court's conclusion that it is not a sauce. The Malpica product is used to make Contadina brand Marinara and Plum Tomato pasta sauces, which are found in the refrigerated section of supermarkets.[16] It is undisputed that the Malpica product is neither retailed nor marketed as a sauce in its condition as imported. The court is not persuaded by the testimony of Ms. Dawn Caldwell that the Malpica product could be marketed as imported as a "chunky fat free tomato sauce." Such hypothetical marketing and product development is not very persuasive. The court is persuaded most by its own taste test, from which the court concludes that the Malpica product would not realistically be eaten as an accompaniment to other foods such as pasta in order to make such other foods more flavorful and palatable. According to the testimony of Nestle's witness, Mr. Gerometta (a distinguished French-trained chef), the Malpica product would at best be characterized as "a lousy sauce" that would be enjoyed only by those with less refined tastes in sauces. The court finds that the Malpica product is not fit for substantial actual use as a sauce. The court tasted a product that had a rich puree taste which blended smoothly with fresh-tasting tomato pieces. However, a true sauce would possess a greater spice content than that contained in the Malpica product. In sum, having examined the Malpica product, the court concludes that the subject merchandise cannot accurately be characterized as a sauce because it does not taste or smell like a tomato sauce, and is neither intended nor actually used as a tomato sauce.

## 2. *Subheading 2103.90.60, HTSUS: "Preparation For Sauce":*

Having determined that the Malpica product is not a sauce, the court now examines whether the Malpica product is a preparation for sauce as provided in subheading 2103.90.60, HTSUS. The court will first determine the common meaning of the term "preparation for sauce." The court will then determine whether the Malpica product is properly classified under subheading 2103.90.60, HTSUS as a tomato sauce preparation.

Because the term "preparation for sauce" is not defined by the HTSUS, the court must first determine its common meaning. At trial, testimony was heard from both Nestle and the government that the term "preparation for sauce" is not used or recognized within the tomato industry. The term "preparation" has been defined as "something that is prepared: something made, equipped, or compounded for a specific purpose * * *." *Webster's Third New International Dictionary* 1790 (unabridged 1993); *see, e.g., Mita Copystar Corp. v. United States,* 17 CIT 374, Slip Op. 93–76 at 13–14 (1993) (toners and developers are

---

[16] The court is careful to note that sauces can be used to make other sauces. Mr. Roberto Gerometta, a Nestle corporate executive chef, presented credible testimony that a smooth tomato sauce is often used as the base for other sauces. Thus, the mere use of a product in manufacturing a sauce does not automatically preclude that intermediate product from being classified as a sauce itself.

properly classified as chemical preparations), *aff'd,* 21 F.3d 1079 (Fed. Cir. 1994). The *Oxford English Dictionary* defines "preparation" as a "substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine * * *." 12 *Oxford English Dictionary* 374 (2d ed. 1989). And in *United States v. P. John Hanrahan, Inc.,* 45 CCPA 120, C.A.D. 684 (1958), the court elaborated upon what constitutes a "preparation" in its analysis of the tariff term "edible preparation." The *Hanrahan* court stated that "where the imported merchandise is a distinct and recognized article of commerce, having an individual name, and which is produced from a raw material by a definite series of steps, said merchandise is a preparation." *Id.* at 122. Based on the cited authorities, the court finds that the common meaning of the tariff term "preparation for sauce" refers to a product that is produced from a raw material by a definite series of steps, and is specifically made to be used as a substantially advanced base or intermediate of a sauce.

At trial, the court heard credible testimony that Nestle intended that the Malpica product be used as the base for its Contadina Plum Tomato and Marinara pasta sauces. Nestle established certain specifications for the Malpica product so that it would satisfy the color, taste, consistency, etc. desired for its Contadina brand refrigerated pasta sauces. Furthermore, Customs concedes that the Malpica product is actually used as an ingredient for "finished" pasta sauces sold at retail. In fact, testimony presented indicates that the Malpica product's sole actual use is as an intermediate for the Contadina pasta sauces. A product's actual use cannot be ignored in determining whether a product falls within an *eo nomine* tariff provision. *United States v. Quon Quon Co.,* 46 CCPA 70, 73, CAD. 699 (1959). Based on the evidence presented, the court finds that not only is the Malpica product specifically intended, but it is also actually used, as a base for the preparation of other finished sauces. For the foregoing reasons, the court concludes that the Malpica product is classifiable under subheading 2103.90.60, HTSUS, as a preparation for sauce.

The court rejects the government's argument that only products in powder form fall within this tariff provision. The relevant *Explanatory Notes* state that "preparations for sauces are usually in the form of powders to which only milk, water, etc. need to be added to obtain a sauce." *Explanatory Notes,* Section IV, Chapter 20 at 158. The court, however, finds that preparations for sauce need not be so narrowly limited. As stated earlier, although useful for guidance, the Explanatory Notes do not constitute controlling legislative history in the interpretation of the Harmonized Tariff System. *Pfaff,* 16 CIT at 1076. Moreover, the *Explanatory Notes* by their own terms do not preclude the possibility that a sauce preparation may be in liquid form. Although sauce preparations are usually in powder form, the *Explanatory Notes* do not state that preparations must always be in powder form. Clearly the term "preparations for sauce" was intended to encompass dehydrated sauces that are often packaged with the vegetables, meats, or other foods with which

they are used. *Summary of Trade and Tariff Information: Edible Preparations: TSUS Items 182.05–.46 182.49–183.05* at 49, USITC Pub. No. 841 (March 1982). Dehydrated sauce mixes[17] are preparations for sauce because they are processed products intended to be used as a substantially advanced base for a sauce. These products are substantially finished in that only water or milk must be added to the powder mix in order to form a finished sauce. These products are not sauces, but are preparations for sauces because they lack an ingredient, e.g. milk or water, or require further processing such as mixing, in order to become what is commonly understood to be a sauce.

Similarly, the Malpica product is a preparation for sauce because it is a product processed according to specifications and is intended to be used as a base of a sauce. Like dehydrated sauce mixes, the Malpica product is substantially finished in that only seasoning and other characterizing ingredients must be added in order to form a finished sauce. The Malpica product is a sauce preparation, but not a sauce, because it lacks key ingredients such as characterizing seasonings, and requires further processing such as mixing, in order to become what is commonly understood to be a sauce. But for missing ingredients such as spices, seasoning, vegetables, etc., the Malpica product would be a sauce. Therefore, although the Malpica product is in liquid form, it is a preparation for sauce because it is a substantially finished product produced from raw materials by a definite series of steps and is specifically made to be used as a base for a tomato sauce.

The court also rejects Customs' argument that the Malpica product is not a preparation for a sauce because it contains a single vegetable ingredient. The Malpica product is, in fact, a product consisting primarily of the combination of two ingredients: tomato pieces and tomato puree. Although both the pieces and puree originate from tomatoes, each is an individual ingredient. Indeed, the tariff schedule provides two distinct headings for tomatoes in pieces (2002.10.00, HTSUS) and tomato puree (2002.90.30, HTSUS). Defendant's witness, Ms. Rainey, testified that even under FDA canned tomato standards, any puree added to the tomatoes as a packing medium would be considered a second ingredient. Each ingredient is uniquely processed through a specifically designed set of steps before being combined to form the Malpica product. The combination of the two primary ingredients, plus the addition of basil, salt, and citric acid, results in a preparation for a tomato-based sauce.

Consequently, given that the Malpica product is a sufficiently processed product, specifically intended to be used as a base for a sauce, and, in fact, is solely used as a substantially advanced preparation for sauce, the court finds that the Malpica product is properly classified under subheading 2103.90.60, HTSUS, as a preparation for sauce.

---

[17] Examples of such mixes include *Defendant's Exhibits T–1* (Knorr's Bearnaise sauce mix), *T–2* (Knorr's Bolognese sauce mix, *T–3* (Knorr's Lyonnaise sauce mix), and *T–4* (Knorr's Napoli sauce mix).

3. *Subheading 2002.90.00, HTSUS: Other Prepared or Preserved Tomatoes:*

The court now turns to Nestle's third proposed tariff provision, subheading 2002.90.00, HTSUS: other prepared or preserved tomatoes. The court finds that, because the Malpica product is more than tomatoes in pieces, but is undeniably a preserved tomato product, the Malpica product is described by subheading 2002.90.00, HTSUS.

HTSUS Heading 2002 is divided into two subheadings: tomatoes, whole or in pieces (2002.10), and "other" prepared or preserved tomatoes (2002.90). Within the "other" subheading, tomato puree is provided for in subheadings 2002.90.0030 and 2002.90.0040. As discussed, the Malpica product is a preserved tomato product that is more than just tomatoes in pieces. The Malpica product consists of two primary ingredients: tomato puree and tomato pieces. Although the tomato pieces represent a significant portion of the Malpica product, the tomato pieces are not the essential character of the Malpica product. Rather, the combination of the tomato pieces with the tomato puree results in a preserved tomato product that is something more than just tomatoes in pieces.[18] Therefore, the Malpica product cannot be classified as tomatoes in pieces under subheading 2002.10.00, HTSUS. The Malpica product also cannot be characterized as essentially a tomato puree containing a few incidental tomato pieces. Therefore, the Malpica product cannot be classified as tomato puree under either subheading 2002.90.0030 or subheading 2002.90.0040, HTSUS. The Malpica product, however, is undeniably a preserved tomato product. Because the Malpica product is not defined by either the tomato pieces or the tomato puree individually, the court finds that the Malpica product is described by subheading 2002.90.0050, HTSUS, as other prepared or preserved tomatoes.

According to the HTSUS *General Rules of Interpretation ("GRI")*, if a product is classifiable under two or more headings, the heading which provides the most specific description shall be preferred to headings providing a more general description. *GRI 3(a)*. The "other" category is reached only if the more specific category does not apply. *Regaliti, Inc. v. United States*, 16 CIT 407, 408 (1992). Having determined that both subheading 2103.90.60, HTSUS, i.e. "preparations for sauces," and subheading 2002.90.0050, HTSUS, i.e. "other prepared or preserved tomatoes" describe the Malpica product, the court finds that the provision for a "preparation for sauce" is more specific than the provision for "other prepared or preserved tomatoes."

---

[18] A Customs classification ruling letter offers further insight. *Plaintiff's Exhibit 37–K* (HQRL 950128 dated Dec. 9, 1991). Customs determined that "Pomi Italian Fresh Tomato Finely Chopped" was not classifiable as a preparation for sauce under subheading 2103, despite the fact that the product's advertising literature stated that the product was "not * * * a sauce, but * * * a base for sauces * * *." Customs held that the product was "more specifically classified in heading 2002, HTSUS, since it is exclusively a prepared or preserved tomato preparation of the type described in the explanatory notes. However, a canned tomato product containing a puree with a drained weight of 96% is something more than whole tomatoes or tomatoes in pieces." Customs therefore concluded that the Pomi product was properly classified under the provision for other tomatoes prepared or preserved otherwise than by vinegar or acetic acid, i.e. subheading 2002.90.0050, HTSUS.

Additionally, courts have held that when two or more tariff provisions are equally descriptive of an item, the provision that describes a use governs over a provision that describes the composition of the subject merchandise. *E.M. Chemicals v. United States,* 9 Fed. Cir. (T) 33, 40–41, 920 F.2d 910, 916 (1990). The Malpica product is classifiable as a preparation for sauces in large part because of its intended and actual use. The Malpica product is classifiable as other prepared or preserved tomatoes because its composition is more than tomatoes in pieces. Therefore, even if one were to view these provisions as being equally specific, classification of the Malpica product would still be governed by subheading 2103.90.60, HTSUS.

## Conclusion

The Malpica product is more than tomatoes, whole or in pieces, because the puree component is equally as important as the tomato pieces in defining the essential character of the Malpica product. Although the common meaning of "other tomato sauces" includes chunky tomato sauces, the Malpica product is not a tomato sauce because it cannot be used as such; i.e., it lacks sufficient amounts of characterizing ingredients which would materially alter the flavor, aroma, texture and consistency of the tomato component, such that the product would then be appropriate for substantial actual use as an accompaniment to make other foods more flavorful and palatable. The Malpica product is, however, a preparation for sauce because it is a product composed of several ingredients that are processed through a specially designed series of steps, and is specifically intended and actually used as a substantially advanced base or intermediate of a finished pasta sauce. Judgment will be entered accordingly.